We will hear argument next in Case No. 237810 United States v. Hampton Okay. Mr. Lynch. Yes, may it please the Court, my name is Stephen Lynch and I have the privilege of representing the Defendant Appellant Justin Hampton in this matter. The evidence presented at trial is insufficient to support finding guilt beyond a reasonable doubt on Cal 2, the October 19, 2021 robbery of a family dollar store in the South New African Bronx, and Cal 4 brandishing a firearm during the family dollar store robbery. Due in no way most favorable to the Government, the trial evidence establishes at most the Appellant's presence in the vicinity of the crime, but does not establish his commission of the robbery, nor his brandishing of a firearm during the robbery. Well, it's not just his presence, right? He traveled from Queens to the Bronx, right? Yes, I think so. So he traveled from his home to the location of the robbery, right? I don't know necessarily clearly his home, but it does establish his presence. And his car was seen in the vicinity of the robbery, right? I mean, you're saying that it's an inadequate identification, but there is an identification of the car by the robber outside the family dollar, right? There's a detective who testifies and identifies a vehicle of the same make and model that is registered to the Appellant. That detective is not an eyewitness to anything that happened on that video. And when you look at the exhibit itself, which are reproduced both in account— And then he's also charged about a robbery spree, right? I'm sorry? He's also charged for a robbery spree, right? There is evidence of multiple robberies. And in the other robberies, there's somebody with that sweatshirt with the stripe, right? There is. In multiple robberies, there are so many people— And that stripe was here in this robbery also, right? There is a dark-colored sweatshirt. I don't believe that— And there's a photo of your client wearing the sweatshirt, or what a jury could conclude is the sweatshirt. I don't think it's fair to say it's the sweatshirt. I think that's a— Yeah, but in the light most favorable to the government, like a jury could conclude that it's the sweatshirt, right? It could, but it's also a very common article of clothing. There's nothing that's distinctive per se about that sweatshirt. And then there's testimony from the teller about the orange-colored gun or whatever that was used in the robbery, right? There's a gun that is described as black and gold with respect to that testimony. And that gun is recovered from Hampton, right? No, it's not. Where is it recovered from? The black and gold gun is recovered from the co-defendant's cousin's bedroom. It's not recovered from Hampton. With respect to that specific testimony about the firearm that I think is relevant to the court's consideration about the brandishing, the sore employee testifies—this is the appendix of 224, lines 10 through 12. When I looked up, I saw a person. He was holding something that looked like a gun. It was black and gold, something like that, but he had it under his sweater. So I think that a very important portion of that testimony is that from that part of the testimony, there's no basis to say that that gun was brandished. There has to be some intent to brandish the firearm, which is absent from the testimony. And it's visible to the teller, right? It's visible to the teller, but it has to be—there has to be an intent to brandish the firearm for the brandishing count. So I think the fact that the teller— It's possible that whoever was robbing—who was committing the robbery just forgot that there was a firearm in his waistband. And so they just didn't intend to bring it in as part of the robbery. No, no, no. The possession is entirely different from the branding. I think that the point that's significant about the issue with the employee and the employee's testimony is if what sounds like that is under a sweater is a firearm that's secreted and not visible and not intentionally— But how—I mean, the brandishing, that testimony that you just read, couldn't a jury reasonably infer that the sweater was in the waistband? I mean, the gun was in the waistband. It was under a sweater. She identifies it by color, right, which means at some point it was shown to her, right? So isn't that a reasonable inference for the jury? I don't think so. I think the fact that it's described as being under a sweater is not necessarily consistent with it being intended to be displayed. But how does she see the color of it? Are you saying he somehow raised his hands and she saw it? Well, I think that's the issue with the evidence. That's not clear. But that's a—one is one inference. One is another inference, right? There are equal inferences that can be drawn here. I don't think that's any point of inference. I think that from the testimonies that he had it under his sweater is inconsistent with an intent to— But how does she see it? What can the jury infer about how she's able to identify a gun that is subsequently recovered? There is nothing else in the testimony that's clear about how that occurs. If I put a gun in my waistband in a way that is definitely visible to the victim of the robbery, have I brandished the gun? If I intend to make it known that I have a gun and that's part of how I'm committing the robbery, I'm brandishing the gun, right? Even if I keep it in my waistband. I think that will depend on the facts of it. I think if it's the type of circumstance where you're sort of lifting—if I'm lifting up my jacket to show a firearm to you, then yes. Okay, so since we are making inferences in favor of the verdict, if the teller, in fact, saw the gun, we know it wasn't concealed entirely under the sweater, right? Which means that it was visible to the victim of the robbery. Yes, I think the testimony is clear that it was visible, yes. I think that is a reasonable inference is that it was visible to the teller. Okay, so if you agree that if I go in to commit a robbery and I have a gun in my waistband in a way that I intend to make visible to the victim so that that person will be intimidated, I brandish the gun. Why isn't giving all inferences in favor of the verdict here show that the gun was brandished? Because there's really nothing to support that inference. I'm sorry, but you just said if I commit a robbery and I have a gun visible in my waistband because I want the victim to be intimidated by my possession of that gun, that is brandishing. If the teller saw the gun, even though she says that to some extent it was obscured by the sweater, if she saw it, it means that it was at least visible to some extent. If we're making inferences in favor of the verdict, doesn't that show that it's exactly the fact pattern that you just said would be brandishing, which is the person's carrying a gun in a way that's visible to the victim of the robbery? I think if they did that inference, there would have to have been something done by the person who has that firearm to indicate some intent to display. Because I think otherwise you're having some scenario where, again, a gun is possessed under these circumstances, but there's no intent to display the gun. There should be something more than that other than— So somebody going in to commit a robbery might forget that the gun is visible and he really meant to cover it up with the sweater but forgot? I'm sorry? It's the idea that he might just be accustomed to carrying a gun with him all the time. And so when he's going to commit the robbery, he forgot that it was in his waistband and he wasn't really brandishing it as part of the crime. Is that the idea? I think the idea is it's a testimony. The testimony is that it was under the sweater. I think that there could be—if the scenario is that someone might bring a firearm into a robbery and not intend to display it or use it unless it's necessary, then that is entirely a circumstance. And that's a different circumstance. But even if you intend not to use it unless it's necessary, if you make it visible to the victim, you're brandishing it, right? That's correct. Right. And so we know that the teller saw it, right? The historical point, yes. The historical point, he did see it. Okay. So if we're making inferences in favor of the jury verdict, doesn't that mean that the person carried—brandished the gun because he committed a robbery while carrying a gun that he made visible to the victim? I think that's—the difference is there's no name visible. The fact that the store employee sees it does not mean that there was any action by the person who's committing the robbery to display the firearm. Okay. Can I ask one more question? So you're not challenging the conviction of the other robberies, right? That's correct. So we have other robberies where there's evidence that it's committed with a kind of distinctive modus operandi where there's a distinctive sweatshirt and there's the same two people and so on. Why can't the jury just say, well, look at all these elements. They're the same. Like we—even if it were like a prior robbery, we would allow the admission of prior robberies in order to be probative of the identity of who perpetrated this robbery. So certainly when the jury is presented with evidence of a whole screen, isn't it permissible for the jury to say, I see that he committed this robbery in this particular way. He must have been the one who committed that robbery in the same way. In terms of the law, absolutely yes. I know that Your Honor was a judge on the Chambers case, and that was essentially a similar issue as in terms of how does the evidence in essentially multiple crimes, can it be used to decide individual crimes? And the answer is yes. The problem in this case is the unique aspect of it. In Chambers, there is a car that is referred to as champagne colored. It has a very unique elongated sunroof. So in terms of that aspect of it— Okay, so your argument depends on the idea that the distinctiveness of the sweatshirt, the characteristics of the perpetrator, the characteristic of the car, all of that isn't distinctive enough to be a modus operandi. Well, I think I would agree with that. But if it were distinctive enough, it would be permissible for the jury to make the inference. Yes, there's really nothing unique that's significantly unique about this sweatshirt. It's sort of a universally worn item of clothing in the city. When I was preparing yesterday for this, I noticed I was wearing a black hoodie as I'm preparing to be in front of Your Honor. Did it have a gray stripe? It did not, but I was— Was it worn inside out? I don't believe it was. Okay, so does that make it more distinctive? Not significantly distinctive. When you compare it to the circumstances that—excuse me—in Chambers, what you have that's very distinctive is you have a more meaningful pattern. You have the same number of people who are involved in every robbery. You have one person who's committing the robbery, and in Chambers, part of the pattern is that the robber is on the phone. There's no hope that he's on the phone with Chambers. Can I ask this question? Yes. So, you know, 404B would allow the admission of a prior robbery to show identity of a subsequent one if there's a modus operandi. But here, all of the robberies are charged together as a spree. Isn't the jury entitled to make inferences about all the evidence before it? And if you thought that there was prejudice from the evidence for one robbery that's going to lead the jury to convict on another one, then you should sever—you should try to sever the trials, right? Judge, I'd say that was not an—I didn't try the case, but that was not an issue. No, but I guess I'm just kind of thinking about, you know, the extent to which the jury is allowed to make inferences based on all of the evidence it sees in one particular case. Right. No, no, I don't think so. So, like, I mean, you're arguing that the modus operandi is not distinctive enough that it wouldn't meet the 404B standard for admitting evidence of prior conduct. But, of course, this is not evidence of prior conduct. It's part of the charged conduct. Right. And so is there some rule that says the jury is not allowed to look at that evidence when it's thinking about all of the spree as a whole? I don't know where that limitation would come from. I'm not—I don't think that's an argument. I'm saying that in the evidence that's particular to this robbery, even viewing it in the context of other robberies, it's not sufficient to establish proof beyond a reasonable doubt, even when viewed in the light most favorable to the government, and especially with respect to this Brandish account, where we have an 84-month sentence that's really based on essentially a couple questions that's posed to this one witness. There's no video that there's a firearm that's brandished during this robbery. And we have what's at best inconsistent testimony about the nature of the observation. Okay. Thank you very much, Mr. Lynch. You've reserved time for a rebuttal, so we'll hear from you again. But let's turn to the government. Mr. Thompson. Good morning, and may it please the Court. My name is Brandon Thompson. I represent the United States in this appeal, and I represented the United States before this report. This Court should affirm the jury's verdict on Counts 2 and Count 4. Hampton's efficiency challenge is clearly without merit. Evidence of the second robbery sufficiently established that the robber who traveled to this robbery in Hampton's car, wearing Hampton's sweatshirt, holding a firearm found in Hampton's co-defendant's apartment while Hampton was present, was indeed Justin Hampton, and also established that Hampton brandished a firearm during this robbery. In addition, at trial, the government presented ample evidence of 14 robberies that Hampton carried out as part of this robbery spree. The government's evidence of these robberies consisted of recurring evidence and evidence of modus operandi that was inextricably intertwined with Hampton's commission of the second robbery and Hampton's use of a firearm in relation to and during the second robbery. Can I ask about that? I mean, I don't know. Maybe this is an academic question and it doesn't make a difference necessarily, but in order to decide whether the evidence applicable to the other robberies is probative of whether he committed this robbery, does it have to meet the 404B pattern standard, or is it different because he was charged with a spree in one particular case? Pursuant to Chambers, Your Honor, the answer is the latter. It's different. It does not meet the requirement for or does not satisfy the 404B requirements. As for Elman Chambers, where there's a probability of multiple robberies, the jury can analyze commonalities among different instances to determine whether the defendant committed a certain robbery in question. What about the brandishing question? So if, in fact, the gun were under the sweatshirt, would he have been brandishing it? Your Honor, the victim of the second robbery's testimony said that Hampton was holding the firearm under his sweater. 18 U.S.C. 924 C-4 says that brandishing is to display all or part of the firearm or otherwise make the presence of the firearm known to another person in order to intimidate that person, regardless of whether the firearm is directly visible to that person. Here, the victim testified that Hampton was holding the firearm underneath his sweater. She testified with respect to the color of the firearm, and immediately after the robbery, she called 911 and said multiple times during that call that the robber used her firearm. If the robber were keeping the firearm hidden but she catches a glimpse of it inconsistent with his intention, would that still be brandishing? In that hypothetical, assuming the 911 call is based in which the call captures the fear and terror that the victim experienced and the victim is saying that the robber used a firearm, yes. It would be brandishing? Yes, Your Honor. Even if they were confident that the intent was to keep it concealed? No, Your Honor. Not if the intent was to keep it concealed. Okay, so you're saying that the testimony that she gives is enough for the jury to conclude that he intended to make its presence known? Yes, Your Honor. And that's because she testified that he was holding it? Yes, Your Honor. And if you hold a gun under a sweater, it's conspicuous enough that you're making its presence known. Is that the idea? It certainly can, and the record here establishes that in this robbery, its presence was made clear. And the record is her testimony or something else, too? Her testimony and the 911 call placed immediately after, Your Honor. That the victim placed the claim that the robber used her firearm as a robbery. Okay. For these reasons, the court should affirm the district court's decision. If the panel has no further questions, the government is happy to restore the papers. All right. Thank you very much, Mr. Thompson. We'll turn back to Mr. Lynch on rebuttal. Thank you, Your Honor. I just want to pick up on the testimony regarding the brandishing. There's really a small portion of the evidence, the testimony of the child that deals with this question. And the totality of that witness's statement is, when I looked up, I saw a person, and he was holding something that looked like a gun. It was black and gold, something like that. But he had it under his sweater. So I do think that the totality of that testimony, even when viewed in the light and most favorable for the government, which obviously they're entitled to, does not show any evidence. What more would you say? I mean, even if I'm holding it under my sweater, you know, as Mr. Thompson just explained, brandishing is whenever you make its presence known. So I can hold something under my clothing, but, like, I can make it very clear that I have something with which I'm threatening a person. That would be brandishing, right? I think it would depend on the circumstances, but it could be. So if that could be and we're making inferences in favor of the verdict, then isn't the inference that that's the way he was holding it under his sweater? Especially because she knows the color of it, so it must have gotten out from under the sweater at some point. I don't think there's any basis to say that, though. That's the problem with the testimony. That's why it's not enough, even when viewed in the light and most favorable to the government, because there's nothing to say that the government didn't ask any follow-up questions. There's no video to support that. It's all purely speculation. But it's not speculation. She testified about the color, the fact that the government didn't ask follow-up or there wasn't cross-challenging that. The jury has testimony that says I saw a gun of a certain color. What more – there's no – the issue is not sort of the quantum of the evidence that you need to say more about the gun, that she knew the model, that she knew the year it was manufactured. Just why isn't that enough? I mean there's no question that she saw a gun. Because that's not – the element is not whether she saw it. The element is whether there was an intent to frame it. So I think that there has to be something more than the fact that she just merely saw it to say that it was intended to be displayed. She said he's holding it. It's under the sweater, but at some point she's able to see it. So clearly there was some – why can't the jury infer that there was something that allowed her to see it and that that is the sufficient evidence for the intent? Because I think that's separate from the seeing it and the brandishing. Again, the fact that it has to be intended to be displayed. And I don't think that – Well, I didn't say Mr. Hampton asked her, well, if it was under the sweater, how did you see it? There was very little follow-up question to that. The counsel for Hampton – the follow-up questions were, why don't we approach you and show you a gun? To my belief, yes. There's some of the – And he didn't ask whether it was under the sweater in a way that made its presence known or not. No, I don't think that's – Is there a claim that Hampton had ineffective assistance of counsel in this case? There's not. So it wouldn't have been the job of the counsel to make it clear that it was being held underneath the sweater in a way that did not show an intent to brandish? I think the counsel could have decided that this testimony is insufficient and made a strategic decision not to pursue any further – That it's just insufficient on its face. Yes. But now in our posture, we make inferences in favor of the verdict, right? And so if you've just acknowledged that there are ways to hold it under the sweater that make its presence known and there are ways that do not, why isn't the inference that it was a way to make its presence known? Because I think – Because she sees it under the sweater. She says he's holding it. There's a 911 call that people obviously know that it's an armed robbery. It's not an unarmed robbery. And so – Yes. It seems like a natural inference even apart from the requirement to infer in favor of the verdict that it was brandished and it was held in a way that made its presence known. I don't think that any view of that case is necessarily stronger than the other. I think the stronger view is that it was not intentional to display it. And I think in circumstances, one of the cases that we say are brief is United States v. Glenn. And that's a homicide case where a murder was reversed by this court where the whole scenario is whether or not the appellant had committed the murder were equally likely. And this court reversed a murder conviction on this ground. So I think that when we have something that's equivocal like this and there's not a strong – a stronger view of one of these views of the evidence, that this court has reversed convictions on the facts. And that's what it should do here. Okay. Thank you very much, Mr. Lynch. The case is submitted, and because that is the last case on our – argued case on our calendar today, we are adjourned.